## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALLEN EDWIN CARTER | : | |
| | : | |
| v. | : | Civil No. CCB-04-3065 |
| | : | |
| MARYLAND AVIATION ADMINISTRATION | : | |

## MEMORANDUM

Allen Carter filed a complaint against the State of Maryland; the Maryland Aviation Administration ("MAA"); the Maryland Department of Transportation ("DOT"); Paul Wiedefeld, the Executive Director of the MAA; Dianne Walker, Chief of the MAA's Classification and Compensation Section; Joseph Nessel, a Deputy Director for the MAA; Benjamin Chin, a Manager of the Division of Facilities and Design at the MAA; Ali Logmanni, an Assistant Manager of the Division of Facilities and Design at the MAA; Mehrzad Rouhani, a Supervisor at the MAA; and Daniel Consultant, Inc. ("DCI"). All of the individual defendants were sued in their individual capacities. Carter alleges twelve federal claims in his complaint and four pendent state law claims. He alleges that 1) the state defendants intentionally discriminated against him on the basis of race in violation Title VII, 42 U.S.C. § 2000e *et seq.*; 2) the state defendants intentionally discriminated against him on the basis of gender in violation of Title VII; 3) the state defendants retaliated against him in violation of Title VII as a result of his protests against the defendant's unlawful employment practices; 4) the state defendants created a hostile work environment based on his race in violation of Title VII; 5) the state defendants

1

discriminated against him based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et. seq.*; 6) the individual defendants intentionally deprived him of his due process rights in violation of 42 U.S.C. § 1983; 7) the individual defendants deprived him of his right to equal protection in violation of 42 U.S.C. § 1983; 8) the individual defendants deprived him of his right to free speech in violation of 42 U.S.C. § 1983; 9) the individual defendants conspired to deprive him of his equal protection rights in violation of 42 U.S.C. §§ 1983, 1985(3); 10) the individual defendants failed to prevent the conspiracy in violation of 42 U.S.C. §§ 1983, 1985(3); 11) the individual defendants intentionally discriminated against him on the basis of race in violation of 42 U.S.C. § 1981; and 12) the individual defendants retaliated against him on the basis of race in violation of 42 U.S.C. § 1981. In his pendent claims, Carter alleges that the defendants are liable for 1) intentional infliction of emotional distress; 2) intentional misrepresentation; 3) breach of contract; and 4) negligence. In response, a motion to dismiss was filed on behalf of all the defendants except DCI. The parties have fully briefed the motion and no hearing is necessary. Local Rule 105.6.

Having reviewed the parties' briefs, I have concluded that Carter has adequately stated a claim for race based discrimination against the state defendants under Title VII; counts V, XIII, XIV, XV and XVI fail to state a claim against the state defendants because the state defendants are protected by sovereign immunity under the Eleventh Amendment; count XIII has failed to state a claim for intentional infliction of emotional distress against any defendant because Carter has not alleged outrageous conduct; and counts IX and X fail to state a claim against any defendant because Carter has not alleged any facts that could constitute a conspiracy. Accordingly, the motion to dismiss will be granted in part and denied in part. All claims against DCI will be dismissed. This opinion expresses no judgment or

position regarding the remaining claims.

## BACKGROUND

Carter is 53 years old and has been employed with the MAA and DOT since 1982. (Compl. ¶ 5). He began working at grade 10 and after 28 years he has never been promoted above grade 11. (*Id.* ¶ 33). Carter alleges that he has performed his work in a satisfactory manner at all times. (*Id.* ¶ 18).

In his complaint, Carter alleges that the DOT and MAA "maintain a custom, policy, practice and a systemic pattern of discrimination against Plaintiff, as well as other similarly situated African-Americans." (*Id.* ¶ 12). For example, Carter alleges that unlike similarly situated white employees, blacks have never had their job positions grand-fathered, (*Id.* ¶ 13); it is the MAA's and DOT's custom and policy to intentionally hold back training from black employees for upper level positions, (*Id.* ¶ 15); the predominantly white managerial staff uses procedures that permit and encourage the use of racial stereotypes and bias in hiring, promotion, and training decisions, (*Id.* ¶ 16); the defendants preselect white applicants and employees for training before job vacancies become generally known, (*Id.* ¶ 16(b)); and certain white employees have been promoted with only a high school diploma while Carter, who possesses a bachelor's degree, has not been promoted. (*Id.* ¶ 22).

More specifically, Carter alleges that Walker ignored his requests for reclassification even though white applicants, such as Randall Dickerson, who falsified their applications were reclassified, (*Id.* ¶ 30); that he was qualified for the Document Manager position he applied for, but the position was awarded to Rouhani instead, (*Id.* ¶ 32(b)); that similarly situated white employees, such as Mary Lou Spake, Wayne A. Johnson, and Randall Dickerson, were promoted above grade 11. (*Id.* ¶ 33). As

an example, Carter notes that Emory Carrigan, a white employee with only a high school education, was promoted to the position of Engineering III while Carter was denied a promotion even though he possesses a bachelor's degree.  (*Id.* ¶ 35).  Carter claims that he requested a reclassification and was promised one within 90 days, but was not reclassified.  (*Id.* ¶ 37).  Similarly, Carter was not provided his performance appraisal when it was due while white employees received their appraisals as scheduled.  (*Id.* ¶ 38).

Many of the allegations set forth by Carter are merely legal conclusions couched as fact. Nonetheless, there are some factual allegations interspersed throughout Carter's complaint.  For example, Carter alleges that he was retaliated against because he protested the defendants' unlawful employment practices and participated in an investigation into those practices.  (*Id.* ¶¶ 45, 46).  The retaliation suffered by Carter included the falsification of his records, Rouhani compiling write-ups about Carter to lay the foundation for an adverse action, Rouhani and Logmanni targeting Carter for harassment and intimidation, defendants' failure to compile Carter's performance appraisal, and isolating Carter.  (*Id.* ¶ 47).

To support his hostile and abusive work environment claim, Carter alleges that the defendants isolated him and other black employees from positions of authority and responsibility; that Carter's supervisor e-mailed others to not contact or consult with Carter; that Carter's workload was intentionally increased; and that the defendants used racial slurs and accused Carter of being "interested in colors" based on his protests against racial discrimination.  (*Id.* ¶¶ 53-55).  To support his ADEA claim, Carter alleges that the defendants discriminated against him on the basis of his age by hiring Rouhani, who is 10 or more years younger than Carter, to a position that Carter applied for, and

reassigning Carter's responsibilities to Grey Miloro who is 21 years old.  (*Id.* ¶ 61).

To support his §§ 1983, 1995(3) civil conspiracy claim, Carter alleges that the individual defendants conspired with each other and DCI by intentionally lowering his performance ratings in retaliation for his protected speech, (*Id.* ¶ 84(a)); by "intentionally failing to inform plaintiff about interview for the position of Document Manager, in order to prevent plaintiff from exercising his lawful right of protest against discrimination" by the MAA and DOT, (*Id.* ¶ 84(b)); and by acting in concert to retaliate against Carter's protests against the MAA's and DOT's racial discrimination.  (*Id.* ¶ 86).  To support his §§ 1983, 1985(3) failure and neglect to prevent conspiracy claim, Carter alleges that he informed Wiedefeld and Walker of the conspiracy and they had the power to prevent it, but they failed to act.  (*Id.* ¶ 90).

As a result of the discriminatory and unlawful acts by the defendants, Carter alleges that he has "suffered damages, including, but not limited to loss of promotion, loss of reputation, emotional distress, loss of weight, loss of income, and embarrassment."  (*Id.* ¶ 40).  *See also id.* ¶¶ 44, 51, 59, 63, 70, 77, 81, 87, 91, 95, 100, 104, 109, 113, 117.

## ANALYSIS

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States,* 120

F.3d 472, 474 (4th Cir. 1997). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Edwards,* 178 F.3d at 244. In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *See. e.g., Young v. City of Mount Ranier,* 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).

In count I of his complaint, Carter adequately states a race discrimination claim under Title VII. As a general matter, the elements of a prima facie claim for discrimination require the plaintiff to demonstrate that (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably. *Frank v. England,* 313 F.Supp.2d 532, 538 (D. Md. 2004); *Carson v. Giant Food, Inc.,* 187 F.Supp.2d 462, 484 (D. Md. 2002). Although a plaintiff is not required to plead a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), he nonetheless must plead facts sufficient to state each element of the asserted claim. *Bass v. E.I. Dupont De Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). Carter has adequately stated a claim for a

violation of Title VII because he sufficiently alleged each prong of the prima facie case.[1]  Consequently, the allegations in Carter's Title VII race discrimination claim are sufficient to survive a motion to dismiss.  Nonetheless, to the extent Carter brought any of his Title VII claims against the individual defendants in their personal capacity, those claims are dismissed.  *See Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998) (holding that individual employees are not subject to liability under Title VII because "Congress only intended employers to be liable for Title VII violations").

Some of Carter's other claims can be easily dismissed.  For example, count V alleges that Carter was the victim of age discrimination in violation of the ADEA.  The Eleventh Amendment bars suit against a state in federal court unless the state has waived its immunity or Congress has validly abrogated that immunity.  *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000).  Maryland has not waived immunity to suit under the ADEA, and Congress did not validly abrogate that immunity in enacting the ADEA.  *Id*. at 91.  The MAA and DOT, as Maryland state agencies, are entitled to this protection.  As a result, Carter's ADEA claim must be dismissed.[2]

Similarly, the State agencies are entitled to sovereign immunity under the Eleventh Amendment

---

[1] The defendants argue that Carter's claim is insufficient because he only identifies one similarly situated employee for comparison. (Def.'s Mot. to Dismiss at 7).  Identifying one comparator, however, who was treated more favorably may satisfy the prima face test.

[2] It does not appear that Carter has brought suit against the individual defendants under the ADEA.  If he had, however, those claims would be dismissed as well because the Fourth Circuit has held that liability under the ADEA is limited to employers and does not extend to individual employees. *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510-11 (4th Cir. 1994)). *See also Causey v. Balog*, 929 F.Supp. 900, 905 (D. Md. 1996).

with respect to Carter's pendent state law claims.  (Counts XIII, XIV, XV, and XVI).  Though Maryland has granted a limited waiver of immunity under the Maryland Tort Claims Act, Md. Code Ann. State Gov't § 12-101 *et seq.*, Maryland did not waive its immunity to suit in federal court.  Md. Code Ann. State Gov't § 12-103(2).  Consequently, the pendent state law claims against the state agencies will be dismissed.[3]  Furthermore, count XIII will be dismissed as to all defendants because the allegations are not sufficient to show "extreme and outrageous" behavior, as is required to state a claim for intentional infliction of emotional distress under Maryland law.  *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).

Finally, counts IX and X of Carter's complaint regarding the alleged civil conspiracy will be dismissed.  A conspiracy requires at least two persons or entities.  It is well-settled under the intracorporate conspiracy doctrine that an entity cannot conspire with itself.  *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985).  To avoid this obstacle, Carter brought suit against the individual defendants in their personal capacity.  Nonetheless, the alleged acts by the individuals were undertaken within the scope of their employment and, therefore, their acts are considered the acts of the agency for

---

[3]Count XVI was not brought against any of the individual defendants.  Because Count XVI was brought against only the state defendants and not against any of the individuals, it will be dismissed in its entirety.  With respect to the three remaining pendent claims, it is not clear whether these counts were also brought against the individual defendants.  For the purposes of this motion, I will assume that Carter did intend to include the individual defendants in the pendent claims.  Unlike the state, the individual defendants are not entitled to the protection of sovereign immunity.  The individual defendants, however, would be entitled to immunity for actions taken within the scope of their authority that were not made with malice or gross negligence.  Md. Code, Courts and Judicial Proceedings, § 5-522.  While the pendent claims against the individual defendants claims may ultimately be dismissed at the summary judgment stage, because other claims are going forward at this point, the remaining pendent claims, counts XIV and XV, will not be dismissed against the individual defendants at this stage of the proceedings.

which they work. *Id*. at 1252. Consequently, the individual defendant employees cannot constitute the separate entities necessary to create a conspiracy because the state employer and individual employees are viewed as a single entity. *See id*. (stating that "[s]imply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation" (quoting *Cole v. Univ. of Hartford*, 391 F.Supp. 888, 893 (D. Conn. 1975)). Carter does allege that the conspiracy also included DCI, an entity outside the agency. Carter, however, did not allege any facts regarding DCI's participation or provide any indication as to what role DCI played in the alleged conspiracy. Instead, Carter merely relies on his legal conclusion that DCI conspired with the individual defendants. Because Carter's employer could not have conspired with itself and Carter has failed to allege any factual involvement in a conspiracy by DCI, Carter has failed to state a claim for civil conspiracy against any of the defendants. As a result, count IX of Carter's compliant alleging a civil conspiracy will be dismissed. Similarly, because Carter has failed to state a civil conspiracy claim, count X of his complaint alleging failure and neglect to prevent conspiracy will also be dismissed.

As stated earlier, because Carter has adequately pled a claim under count I, the defendants' motion to dismiss as to that count will be denied. In the interest of judicial economy, some of the remaining claims will not be addressed on their merits at this point because discovery will proceed regardless.

A separate order follows.

|  |  |
|---|---|
| May 6, 2005 | /s/ |
| Date | Catherine C. Blake |

United States District Judge